JOSEPH MANUEL RODRIGUEZ, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 21226

June 27, 1991

813 P.2d 992

*Morgan D. Harris,* Public Defender, and *Robert L. Miller,* Deputy and *Stephen J. Dahl,* Deputy, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney, and *James Tufteland,* Deputy and *Robert Langford,* Deputy, Clark County, for Respondent.

## OPINION

*Per Curiam:*

A jury convicted Joseph Manuel Rodriguez of one count of first degree kidnapping and three counts of sexual assault. The indictment charged appellant as an aider and abettor in the commission of the kidnapping, and as an aider and abettor in two of the sexual assault charges. On appeal, Rodriguez challenges the sufficiency of the evidence supporting the convictions for which he was charged as an aider and abettor. We hold that there was insufficient evidence to support the challenged convictions and therefore reverse in part.

## FACTS

On August 18, 1989, the victim went to the Guadalajara Bar. While there, she met a male acquaintance, who was accompanied by four other men. One of these men identified himself as "Carlos." After the victim left the bar on foot, she was accosted by Carlos and another man from the bar, later identified as William Bermudez. Carlos took the victim's purse. The victim protested, telling the men she wanted to go home. The men allowed the victim to continue on her way. The victim then

walked in the direction of Fantasy Park. As she entered the park, the victim was suddenly grabbed from behind by Bermudez. Bermudez pushed the victim, she slipped, and they fell down onto the ground. Then, while Carlos held her hands above her head, Bermudez sexually assaulted the victim. The three other men from the Guadalajara Bar appeared on the scene. Carlos was the next to sexually assault the victim, followed by two of the other three men from the bar. Bermudez then got on top of the victim again, and was caught in that position by the arriving police.

At trial, the victim identified appellant as one of the men who had sexually assaulted her. Metropolitan Police Department Criminalist Terry Cook testified that appellant was among the three to three and one-half percent of the population which could not be eliminated as a donor of sperm found in vaginal swabs taken from the victim on August 18, 1989.

Following trial, the jury found appellant guilty on Count I (aiding and abetting in the commission of first degree kidnapping), Count IV (sexual assault as a principal), Count XI (aiding and abetting William Alexander Bermudez in the commission of sexual assault) and Count XII (aiding and abetting Cristobal Abrejo in the commission of sexual assault).

## DISCUSSION

In reviewing the sufficiency of the evidence supporting a jury's verdict, the question is whether a rational jury could have been convinced of the defendant's guilt beyond a reasonable doubt by the evidence it had a right to consider. *See* Holyfield v. State, 101 Nev. 793, 805, 711 P.2d 834, 842 (1985); Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980).

The kidnapping charge was found in Count I of the indictment charging Cristobal Abrejo, William Alexander Bermudez and appellant. Count I charged the defendants with aiding and abetting each other in kidnapping the victim by physically restraining her and thereby preventing her escape, or by acting as lookouts for each other while each defendant sexually assaulted her.[1]

---

[1] NRS 200.310 provides in pertinent part:

1. Every person who willfully seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any person by any means whatsoever with the intent to hold or detain, or who holds or detains, the person for ransom, or reward, or for the purpose of committing sexual assault, extortion or robbery upon or from the person, or for the purpose of killing the person or inflicting substantial bodily harm upon him, or to exact from relative, friends, or any other person any money or valuable thing for the return or disposition of the kidnapped person . . . is guilty of kidnapping in the first degree.

Count XI of the indictment charged appellant with aiding and abetting William Alexander Bermudez in the sexual assault of the victim by physically restraining her and thereby preventing her escape, or by acting as a lookout while Bermudez committed the sexual assault. Count XII charged appellant with aiding and abetting Cristobal Abrejo in the sexual assault of the victim in the same way.[2]

After reviewing the record and the briefs, and after hearing oral argument, we conclude that there was insufficient evidence to support the jury's verdicts of guilty under Counts I, XI and XII. While there was ample evidence presented that appellant personally sexually assaulted the victim, there was no evidence presented that appellant in any way aided and abetted the other suspects in kidnapping the victim or in sexually assaulting her. On the contrary, the evidence presented tended to show that appellant did not commit those crimes. For example, the victim, the sole witness of the attack who testified, stated that only Carlos and Bermudez were involved in forcing her into the park. The victim likewise identified only Carlos and Bermudez as having restrained her during the attack. The victim testified that appellant arrived on the scene after Bermudez had already sexually assaulted her, and testified to no actions by appellant except for the actual sexual assault. Finally, the victim made absolutely no mention of anyone acting as a lookout. In summary, the state presented absolutely no evidence to prove the specific acts charged in the indictment, *i.e.,* that appellant prevented the victim's escape while others assaulted her, or acted as a lookout while others sexually assaulted her.

It is well established that mere presence at the scene of a crime cannot support an inference that one is party to an offense. Winston v. Sheriff, 92 Nev. 616, 555 P.2d 1234 (1976). Thus, although we share the jury's outrage over the acts of violence perpetrated against this young woman, we are unable to affirm the convictions that are based on aiding and abetting. Accordingly, we reverse the judgments of conviction for first degree kidnapping (Count I), and sexual assault by aiding and abetting (Counts XI and XII). We affirm appellant's judgment of conviction for sexual assault (Count IV).

---

[2]NRS 200.366 provides in pertinent part:

1.  A person who subjects another person to sexual penetration . . . against the victim's will or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his conduct, is guilty of sexual assault.

436

MOWBRAY, C. J., dissenting:

Respectfully, I dissent.

"Although mere presence cannot support an inference that one is a party to an offense, People v. Francis, 450 P.2d 591 (Cal. 1969), presence together with other circumstances may do so. State v. Cummings, 423 P.2d 438 (Haw. 1967)." Winston v. Sheriff, 92 Nev. 616, 618, 555 P.2d 1234, 1235 (1976). The majority concludes that the evidence submitted at trial was insufficient to support appellant Rodriguez's convictions for kidnapping and sexual assault by aiding and abetting; however, it is my conclusion that Rodriguez's presence at the scene of the crimes, combined with his complicity in the crimes and his vicious sexual assault upon the victim, constitutes more than sufficient evidence to support Rodriguez's convictions for kidnapping and sexual assault by aiding and abetting.

The facts of this case indicate a coordinated series of events sufficient to support a conclusion that five men acted in concert when they sexually assaulted a young woman. Rodriguez stalked the victim in a pick-up truck while two of his friends took her purse and pursued her into a park. As she entered the park, the two men grabbed the victim, threw her to the ground, and tore parts of her clothing from her body. One of the assailants sexually assaulted the victim while the other held her down. Moments later, Rodriguez and two more men arrived at the scene. The victim was sexually assaulted a second time. At the conclusion of this attack, one of the victim's assailants said "next" and the three remaining men proceeded to sexually assault the ill-fated woman, each taking turns, waiting for others to consummate their cruel invasion of the victim's body before commencing their own. The appellant was not the first man to assault the victim on that night; nor was he the last.

It was appropriate for the jury to conclude that the five men, all acquaintances, were not by happenstance drawn to the same park, at the same time in the middle of the night, with the same desire to sexually assault the same woman, each man taking turns. Simple logic demands a conclusion that these five men coordinated their efforts in this attack. A contrary conclusion is untenable.

When five men sexually assault a woman in this brutal and coordinated fashion, the group effort assists each individual in the perpetration of their crimes: each assailant directly and indirectly encourages and induces the others to commit sexual assault through emulation and example. The combined presence of the assailants enhances the ability of each individual to consummate their crime by increasing the intimidation the victim must feel,

and by limiting the victim's ability to flee, resist, or protect herself. The group assault also works to intimidate anyone who might otherwise intervene on the victim's behalf, and in the minds of men enervated by moral corruption, the evil acts of the group work to justify the perverted thoughts and actions of each individual.

Understandably, in the course of the madness that occurred in the park that night, the victim did not see any of the men acting as a lookout, and it was difficult for her to specifically identify those who may have held her arms and legs during the assaults. Nonetheless, in a very real sense, every man who was present that night and who sexually assaulted the victim assisted the other men in assaulting the victim as well: each man effectively held the victim's body at bay and physically restrained her, not only by his presence and complicity in the others' crimes, but by a demonstrated bent for malevolence. Each man encouraged and induced the others to act through example, and provided the others with an opportunity to emotionally detach themselves from their individual crimes because of the group assault.

"[E]very person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony . . . is a principal, and shall be proceeded against and punished as such." NRS 195.020. A rational trier of fact could have found, beyond a reasonable doubt, the elements of kidnapping and sexual assault by aiding and abetting from the facts of this case and from appellant's actions on the night in question; this court should not usurp the jury's function by ruling otherwise. *See* Jackson v. Virginia, 443 U.S. 307 (1978); Koza v. State, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984).

It is my position that a principle of law should not be used to obscure the facts of a given case; nor should it be used to eclipse common sense. Rodriguez was not merely present at the scene of the crime as the majority suggests. The record supports a conclusion that Rodriguez, both directly and indirectly, assisted, encouraged and induced his friends to physically restrain and assault a hapless woman in a vicious gang attack. His convictions for kidnapping and sexual assault by aiding and abetting should be affirmed by this court.

Accordingly, I dissent.